Taxes; income tax; deductions; retirement annuity payments; inclusion in gross income; interest on saving certificates; exception to Sec. 116 dividend exclusion; non-business bad debt; interest on debt.—On January 4, 1980 the court entered the following order:
Michael V. Marino, with whom was Assistant Attorney General M. Carr Ferguson, for defendant. Theodore D. Peyser and Robert S. Watkins, of counsel.
Before Friedman, Chief Judge, Kunzig and Smith, Judges.
This action for refund of federal income taxes paid in 1975 by taxpayers is before the court on defendant’s motion for summary judgment. A submission by plaintiff Winfrey F. Ruffin was filed on September 12, 1979, and was allowed as plaintiffs’ response to defendant’s motion for summary judgment. Plaintiffs are husband and wife residing in Kansas City, Kansas. Four separate issues were presented by plaintiffs’ petition and all issues having been examined are resolved in favor of the defendant.
Winfrey F. Ruffin is a retired federal civil service employee, and his wife, Jessa G. Ruffin, was employed by the Kansas City, Kansas Public Schools Unified School District No. 500, which is part of the Kansas City, Kansas Public School system. Pursuant to a Modification of Employment Agreement dated August 3, 1967, Jessa G. Ruffin subsequently entered into a retirement annuity contract with the Metropolitan Life Insurance Company, through her employer. This agreement called for her employer to reduce Mrs. Ruffin’s salary, by the sum of $100 per month, which was to be paid to Metropolitan Life in fulfillment of the conditions of that contract. Plaintiffs did not include the $100 per month premium payments in their gross income figure for 1975; however, they deducted these payments to Metropolitan Life on their 1975 tax return. Section 219 of the Internal Revenue Code of 1954 (the code)[1] permits money paid for such a retirement annuity to be deducted from gross income. This general rule however is modified by subsection 219(b)(2)(A)(iv) of the code. Under this subsection, no deduction is allowable to a taxpayer, if that taxpayer is already an active participant in a retirement plan established by the state, political subdivision, or instrumentality thereof. Mrs. Jessa *543 G. Ruffin was a member of such a plan, the Kansas Public Employees Retirement System. Mrs. Ruffin paid contributions into that system, and thus she was an active participant. Therefore, under section 219 of the code, the monthly payments made by Mrs. Ruffin through her employer, to the Metropolitan Life Insurance Company, were not deductible from gross income.
Another issue presented in plaintiffs’ petition is whether the interest on savings certificates is includible in gross income for the year that the interest is earned, or whether the tax on this interest can be deferred until the certificates become redeemable.
In April 1975, plaintiffs purchased a 4-year savings certificate from the Arrowhead State Bank for $10,000. At that time, plaintiffs were given an option. Plaintiffs could have had this interest sent to them, as the interest was compounded, or they could have elected to have the interest added to the face value of the certificate. Plaintiffs were informed at the time of this election that they could have withdrawn the interest without penalty at any time. This income from interest, amounting to $369.29, was not reported in gross income on the amended 1975 return, but should have been.
Other savings certificates were purchased in 1975 by plaintiffs. On December 11, 1975, plaintiffs bought a savings certificate for $1,000 from the Commercial National Bank, and received immediately a $309.16 color television in lieu of interest. No amount representing the fair market value of the television set was reported in plaintiffs’ gross income for the tax year, although it should have been. At various other times during the year, taxpayers purchased other share certificates of deposit for their account at the Wyandotte County Teachers Credit Union. These 1-year certificates, totaling some $12,000, accumulated some $291.43 of interest. Since interest is income, this $291.43 should also have been reported on the 1975 return, and was not.
Section 61 of the code defines gross income, except as otherwise provided, as all income from whatever source derived. Treasury Reg. § 1.451-2(a) (1975) states that income not actually reduced to taxpayer’s possession is constructively received by him in the taxable year in which *544 it is credited to his account, set apart for him, or otherwise made available so that he can draw upon it at his will. In addition to the color television that plaintiffs had already received in lieu of interest, plaintiffs could have withdrawn a total of $969.88 in interest that their certificates of deposit had earned for them during 1975. Just because the plaintiffs chose not to withdraw the interest does not alter the fact that they were in actual or at least in constructive possession of this money. Thus, taxes were due on the interest generated in 1975 from such savings certificates, whether in the form of money or property with a fair market value.
Plaintiffs’ third complaint centers on defendant’s refusal to exclude the first $100 in dividends received in 1975 from gross income. Jessa G. Ruffin owned a "share account” at the Wyandotte County Teachers Credit Union. During 1975, plaintiffs received a "dividend” in the amount of $151.18 from the credit union for the use of her "share account.” Section 116 of the code allows for the partial exclusion of dividends from gross income for individuals, up to the first $100 worth of income derived from such a source. Subsection (c) of this section qualifies this, however, by saying that if a deduction is permitted under section 591, then this $100 exclusion from gross income is not allowed. In the instant case, Mrs. Ruffin’s credit union took a deduction for the dividend it had placed in her account, pursuant to section 591. Again plaintiffs could have withdrawn this "dividend” from their "share account” at any time without fear of penalty. Unfortunately, the plaintiffs fall under the exception to the section 116 dividend exclusion. Therefore all of the $151.18 should have been included by plaintiffs in their gross income for 1975.
The final issue presented in plaintiffs’ petition is whether a 1974 loss suffered by taxpayers was a casualty loss or a nonbusiness bad debt. Assuming that it was the latter, should the deduction for this loss include the $97.71 in lost interest on this bad debt? In May 1959, plaintiffs sold their former home to Mr. and Mrs. Leon Sawyer for $6,200. Plaintiffs accepted from the Sawyers a second mortgage note in the amount of $3,575 secured by the property sold. In 1974, the Sawyers both died, owing *545 plaintiffs $1,628.87 in principal and $97.71 in interest on the second mortgage note. A lien was filed on the property by municipal authorities for back taxes on the property. Plaintiffs were never paid the money due them. In calculating their 1975 taxes, plaintiffs attempted to deduct the $1,628.87 in principal and the $97.71 in interest as a casualty loss. Upon audit, the Internal Revenue Service characterized this loss as a nonbusiness bad debt.
Section 165(c)(3) permits a deduction for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.” Plaintiff Winfrey Ruffin stated that "I’ve always understood Death as a Casualty, we don’t know when its going to happen, and I sure can’t consider it a short-term loss as the defense attorney consider it.”
Plaintiffs misconceive the relation between the "casualty” and the loss. Death was a casualty which resulted in loss of life to the Sawyers; it did not destroy their note to plaintiffs. The loss to plaintiffs on the second mortgage note arises from its nonpayment by the Sawyers and the absence of sufficient assets in their estates to which plaintiffs could look for satisfaction.
A default on a land contract due to the death of the obligors is not a loss similar in character to that caused by fire, shipwreck, or storm. See Matheson v. Commissioner, 54 F. 2d 537, 539 (2d Cir. 1931). This loss is better characterized as a bad debt under section 166 of the code. The Sawyers owed plaintiffs a debt that they, or their estates, could not pay. Thus, this was a wholly worthless debt under section 166(a)(1), and since this debt arose in a nonbusiness enterprise, section 166(d)(1)(B) applies which states that any nonbusiness debt that becomes worthless within the tax year shall be considered a loss from the sale or exchange of a capital asset held not more than 6 months. Since Congress mandated that this loss was to be considered a loss of a capital asset, section 165(f) states that capital losses shall be recognized for deduction purposes only to the extent that sections 1211 and 1212 allow. Section 1211(b)(1) states the limitation on how much of this debt can be deducted within a given tax year. Thus, the Internal Revenue Service acted properly in allowing plaintiffs to deduct $1,000 from their 1975 gross income. *546 Section 1212 also allows plaintiffs to carryover the remainder of the loss. This carryover would allow a further deduction of $628.87 in 1976. Therefore, plaintiffs cannot deduct the entire loss of this property in 1975.
It is quite another question whether the interest on this debt is deductible. Treasury Reg. § 1.166-6(a)(2), as effective in 1975, indicated that when dealing with mortgaged or pledged property, interest could be included in the deduction allowable for a loss, but only if it had previously been returned as income. This phrase "only if it has previously been returned as income” means that plaintiffs could have taken a deduction for the $97.71 in interest assuming that they had paid taxes on that sum. The purpose of the deduction is to offset the taxes that plaintiffs would have paid on the $97.71 had they received it from the Sawyers. In the instant case, plaintiffs never paid taxes on the $97.71, and thus it was not returned as income. Under these circumstances, the Ruffins cannot deduct this amount.
it is therefore oedered, upon consideration of the parties’ submissions and other papers, but without oral argument, that defendant’s motion is granted and plaintiffs’ petition is dismissed.

 All references made to the code are to the Internal Revenue Code of 1954, as amended in 1975.