MICHAEL WRIGHT AND MARY ANN WRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 5244-88
United States Tax Court
T.C. Memo 1989-557; 1989 Tax Ct. Memo LEXIS 555; 58 T.C.M. (CCH) 369; T.C.M. (RIA) 89557; October 11, 1989
Daniel J. Winfree, for the petitioners. Valerie K. Liu and William H. Quealy, Jr., for the respondent. CLAPP
MEMORANDUM OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1983 in the amount of $ 4,904 and additions to tax under section 6653(a)(1)[1] and (a)(2) in the amounts of $ 245 and 50 percent of interest due on the deficiency, respectively. After concessions by the parties, the sole issue remaining is whether petitioners constructively received, and should have included in their taxable income for the year 1983, $ 9,406.28 accrued during 1983 on an investment as reported by Elmas Trading Corporation (Elmas). *556 This case was submitted fully stipulated under Rule 122. Petitioners, Michael and Mary Ann Wright, resided in El Cajon, California when their petition was filed. Petitioners filed a joint income tax return for the year ended December 31, 1983. All references to petitioner in the singular are to Michael Wright. Petitioner invested in an entity called Innovative Investments (Innovative). This investment vehicle was offered by Elmas. The terms of petitioner's investment were set forth in a preincorporation agreement. Under this agreement, petitioner would lend money to Innovative, which would then use these funds for arbitrage trading. The agreement provided that the return on petitioner's investment would be the first 3 percent earned each month for amounts he had on deposit with Innovative, and an additional 12-percent simple interest on funds left on deposit for a full year. The monthly earnings were to be paid quarterly. Any interest due on funds left on deposit for a full year was to be paid annually. On January 11, 1983, petitioner invested $ 25,100 in Innovative. Petitioner received statements dated July 1, 1983, October 1, 1983, and December 31, 1983. Accruals *557 set forth in these statements showed $ 9,406.28 as earned during 1983. Petitioner did not withdraw any portion of these earnings or his principal during 1983, although under the terms of the agreement he could have withdrawn part or all of his funds at any time. On February 22, 1984, petitioner received $ 38,341 from Elmas. This amount included $ 25,100 principal plus $ 13,241 earnings to date of withdrawal. After liquidating their investment, petitioners discovered that Elmas was a pyramid or "Ponzi" type scheme through which early investors were paid "earnings" and in some cases return of capital out of capital contributions by later investors. The Securities and Exchange Commission brought suit against Elmas and a receivership was created. S.E.C. v. Elmas Trading Corp., 620 F. Supp. 231 (D. Nev. 1985), affd. without published opinion 805 F.2d 1039 (9th Cir. 1986). The issue presented is whether petitioners are required to report as 1983 income the $ 9,406.28 accrued in 1983, rather than report such amount as 1984 income when such funds were actually received. Petitioners use the cash basis method of accounting. *558 For cash basis taxpayers, the general rule is that an amount is considered income for the year in which it is actually received. Sec. 451(a). However, it is also held that "income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him * * * whether he sees fit to enjoy it or not." Corliss v. Bowers, 281 U.S. 376, 378 (1930) (Holmes, J.). The doctrine of constructive receipt concerns instances in which an amount not actually received will be deemed received and, therefore, includable in income for a particular year. Constructive receipt is defined by section 1.451-2(a), Income Tax Regs., which provides: Income * * * not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account * * * or otherwise made available so that he may draw upon it at any time * * *. Thus, under section 1.451-2(a), Income Tax Regs., income that is available for withdrawal is taxable to a cash basis taxpayer in the year in which such income becomes *559 available. For example, although a certificate of deposit may have a maturity date several years from the date of deposit, the certificate may earn interest that can be withdrawn without penalty at any time. The interest earned on such a certificate of deposit is includable in income in the year in which such interest is earned. See Ruffin v. United States, 222 Ct. Cl. 541 (1980). However, if a taxpayer's control of the receipt of an amount is subject to substantial limitations or restrictions, then such income is not constructively received. Sec. 1.451-2(a), Income Tax Regs.
In the present case, petitioners constructively received the earnings on their investment at the times they were credited to petitioners' account. The investment was characterized as a loan with a stated percentage of return on the funds borrowed. The parties have stipulated that under the terms of the preincorporation agreement, petitioner could have withdrawn his principal or the accruals thereon at any time. Petitioners have not asserted any substantial limitations or restrictions on their ability to withdraw their funds, nor do we perceive any factual basis *560 for such limitations or restrictions. Petitioners dispute the applicability of the doctrine of constructive receipt to their case by likening their position to that of an embezzler. In order to perpetrate embezzlement, the embezzler must have at least initial control over the funds which he or she embezzles. Estate of Geiger v. Commissioner, 352 F.2d 221, 231 (8th Cir. 1966). Because embezzlement takes place when control over the funds is taken, such amounts would be taxable in the year the embezzlement takes place. See James v. United States, 366 U.S. 213, 219 (1961). Petitioners contend that Innovative is a scheme whereby the funds paid to petitioners were not earned through arbitrage but were misappropriated from newer investors' accounts. Therefore, petitioners stand in the same position as Innovative, with the result that no income was created until the funds were misappropriated by payment to petitioners. Petitioners' argument is ingenious, but it doesn't fly. Petitioner is not an embezzler. Innovative is the wrongdoer. Petitioners did not discover *561 that Innovative was a "Ponzi" type scheme until well after they liquidated their investment. We are concerned with what happened to petitioners. They received ordinary income from their investment in Innovative and $ 9,406.28 was constructively received in 1983. Upon these facts, where and how Innovative got the funds to pay petitioners is immaterial. See Sunstein v. Commissioner, T.C. Memo. 1966-43. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩