JOE G. SCHNEIDER AND LORETA A. SCHNEIDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schneider v. Commissioner
Docket No. 8950-84.
United States Tax Court
T.C. Memo 1987-560; 1987 Tax Ct. Memo LEXIS 552; 54 T.C.M. (CCH) 1044; T.C.M. (RIA) 87560; November 9, 1987. Arthur P. Tranakos, for the petitioners. *
Mark H. Howard, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec. [1]
Sec.
Sec.
Petitioners
Year
Deficiency
6651(a)
6653(a)(1)
6654
Joe G. and
1979
$    413
$   103
$  36
--
Loreta A.
Schneider
Joe G. and
1980
1,364
341
79
--
Loreta A.
Schneider
Loreta A.
* 1981
4,126
1,032
206
$ 273
Schneider
Joe G.
** 1981
11,975
2,994
599
917
Schneider
*555 The issues for decision are (1) whether a trust established by petitioners is to be recognized as a separate taxable entity for Federal income tax purposes; (2) if the trust is a separate entity, whether the grantor trust provisions apply; (3) whether petitioners should have recognized gain on the administrative tax sale of their farm in taxable year 1981; (4) whether petitioners are entitled to joint return filing status for the taxable years 1981; and (5) whether petitioners are liable for the additions to tax determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Hay Springs, Nebraska, when they filed their petition in this case. During the taxable years in question, petitioners operated a farm in Hay Springs. On April 19, 1978, petitioners executed certain documents relating to the transfer of farm property to "Forty-Four Trust." [2] In the document identified as "Minutes of Forty-Four Trust," the creator of the Trust, Edda Mae Soester, agreed to exchange one dollar and 100 trust certificates with petitioners *556 in return for real and personal property. This property included petitioners' 166-acre farm, livestock, and the machinery and equipment used in the farming operations. This transaction was notarized by a general notary of the State of Nebraska. The creator appointed Lowell G. Anderson as the first trustee who, according to the provisions of the "Contract and Declaration of Trust," appointed Joe G. Schneider as the second trustee. Petitioners also executed what were identified as "Quitclaim Deeds." These deeds transferred real property and mineral rights from petitioners to the Trust. These real property and mineral rights constitute petitioners' farm property. These deeds were recorded on May 10, 1978. After execution of the deeds, the mortgages on the property remained with petitioners. [3]
*557 Petitioners contend that they directed that the 100 trust certificates be issued to their children. Petitioners filed no gift tax returns related to this alleged transfer to their children. From 1979 through 1981, the Trust maintained bank accounts in Nebraska, Montana, and Idaho. Petitioners had sole signatory authority over these Trust bank accounts. From our review of the entire record, we find that all decision making authority regarding Trust property and operations rested solely with petitioners. During the years in issue, petitioners lived on the farm transferred to the Trust. Petitioners did not pay the Trust any rent. The insurance on petitioners' residence was paid from funds held by the Trust. The utilities, electricity, and telephone incurred on the farm were paid out of Trust accounts. Petitioners did not reimburse the Trust for any of these paid expenses. Mr. Schneider received a farm manager's fee of $ 3,775, $ 2,562, and $ 3,044 for taxable years 1979, 1980, and 1981, respectively. On January 10, 1985, respondent received copies of unexecuted Forms 1040NR for the years ending March 31, 1980, 1981, and 1982. These forms list Bold Acres as the taxpayer *558 with the address being c/o Trust Co. of the Americas, Turks & Caicos Islands, British West Indies. No taxpayer identification number was listed on any of the returns. These returns showed income and expenses and financial information regarding petitioners' farm operations. From a review of his records, respondent was unable to find that these or any other returns were filed in the name of Forty-Four Trust or Bold Acres Trust. Accordingly, we find that no Federal income tax returns were filed on behalf of the Trust under either of the names "Forty-Four Trust" or "Bold Acres." On May 10, 1982, respondent received petitioners' Form 1040 Federal individual income tax returns for taxable year 1979 and 1980. After the issuance of respondent's statutory notices of deficiency for taxable year 1981 on January 6, 1984, petitioners provided respondent with a copy of petitioners' Form 1040 Federal individual income tax return for 1981. This joint return was dated March 2, 1984. There is no evidence on the record that petitioners actually filed with respondent a Form 1040 Federal income tax return for taxable year 1981. Accordingly, we find that no Form 1040 Federal individual income *559 tax return was filed by petitioners for taxable year 1981. In his notice of deficiency dated January 6, 1984, respondent redetermined petitioners' taxable income for taxable years 1979 and 1980. At the time of audit, no return had been filed by petitioners for 1981; accordingly, by separate notices of deficiency dated January 6, 1984, respondent made an initial determination of petitioners' farm income for taxable year 1981 from the sale of cattle and hogs determined by contacting third-party sources. [4] Respondent based allowable expenses on the 1977 and 1978 Form 1040 individual Federal income tax returns filed by petitioners. The net farming income computed under this method was $ 2,896, $ 7,673, and $ 15,255 for taxable years 1979, 1980, and 1981, respectively. Prior to the commencement of this proceeding, respondent had issued a statutory notice of deficiency on Federal *560 income tax returns filed by petitioners for the years 1975 and 1976. [5] Following the assessment of the tax deficiencies and additions to tax determined by the Court for the years 1975 and 1976 totalling $ 95,629.34, respondent began collection action against petitioners. Respondent filed a nominee lien on real property titled in the name of Forty-Four Trust as nominee of petitioners. This property comprised the farm and residence of petitioners. On December 23, 1981, respondent seized and administratively sold this real estate. Petitioners' son-in-law and daughter purchased the farm property at the tax sale for $ 116,000. Petitioners continued to live on this farm under a lease arrangement with their daughter and son-in-law. *561 For taxable year 1981, respondent computed petitioners' basis in the farm property based upon the stamp tax applicable to transfers of real estate in Nebraska. Respondent determined a cost basis of $ 29,338 based upon an interpolation computation of the stamp tax incurred at the time the property was purchased in 1950. Accordingly, respondent determined that petitioners had realized a long-term capital gain of $ 43,331 from the sale of their farm in taxable year 1981. OPINION The first issue for consideration is whether the Trust is to be recognized as a separate taxable entity for Federal income tax purposes. Petitioners contend that the Trust was a valid entity and should be recognized for Federal tax purposes. Respondent asserts that the Trust was a sham and its transactions were without economic substance. In the alternative, respondent further argues that, if we conclude that the Trust was a valid entity for tax purposes, then petitioners are taxable on the income under the grantor trust provisions of sections 671 through 679. We agree with respondent that the Trust was a sham and that petitioners were the true earners of the income from petitioners' farming operations *562 for the taxable years at issue. Accordingly, we need not reach respondent's alternative argument. [6]
This case involves another of the so-called family trust schemes that the courts have disregarded repeatedly and uniformly for Federal tax purposes. See ; ; ; ; . [7]
*563 A taxpayer has the legal right to minimize his taxes, or avoid them completely, by any means which the law permits. See . However, this right does not confer upon the taxpayer the right to structure a paper entity to avoid tax when the entity possesses no economic substance. When the form of a particular transaction has not altered any economic relationship, we will look through the form of the transaction and apply tax law according to the substance of the transaction. , citing , affd. per curiam . Petitioners have the burden of proving that the Trust is a separate entity for tax purposes. ; Rule 142(a). After a careful review of the entire record before us, we are persuaded that the Trust was a sham without economic substance for the following reasons. First, petitioners' activities on the farm property changed little, if at all, after the creation of the Trust. Petitioners conducted the farm *564 operation and their personal lives just as they always had. They lived in the same house with the same furnishings. They farmed the same property. The only perceivable difference was petitioners' attempts to pay for personal and farm expenses from the Trust's bank accounts. In essence, the Trust was used as petitioners' personal bank account and was tailored to the personal needs and desires of petitioners. Second, petitioners had complete control over the assets and operatons of the Trust. Soon after creation of the Trust, petitioner became trustee. Petitioners retained effective control of all decision making. Petitioner [8] was appointed as manager of the Trust responsible for its business operations. Other trustees existed in name but took no active role in Trust affairs. [9] Petitioners had sole signatory authority over the Trust bank accounts. *565 Petitioner claims that his children were made beneficiaries of the Trust soon after its creation. The only evidence of this is petitioner's testimony which we found to be unpersuasive. We need not accept self-serving testimony to meet a party's burden of proof without substantiating documentation. , affg. a Memorandum Opinion of this Court. In sum, the Trust simply reflected petitioners' attempt to convert personal income and expenses into the income and expenses of the Trust. The sole purpose of the Trust was the avoidance of tax. Combined with the lack of a valid purpose, the above factors deprive the Trust of economic substance and necessitate our finding that the Trust was a sham. See Neely v. Commissioner, 775 F.2d at 1094; ; . [10]
*566 Petitioners object to the assessment of deficiency relating to respondent's determination of gain on the seizure and sale of petitioners' farm and residence to satisfy a prior tax judgment rendered in favor of respondent. Petitioners contend that the property sold belonged to the Trust. We have already determined that the Trust was a sham without economic substance and that its transactions are attributable to petitioners. Furthermore, a tax sale, as any forced sale, is treated the same as a voluntary sale or exchange. . See also . We therefore hold that the gain on the tax sale of petitioners' farm and residence is taxable to petitioners. [11]
*567 Petitioners assert that they are entitled to file a joint return for taxable year 1981. As a result of petitioners' failure to timely file a return for the taxable year 1981, respondent computed their taxes for 1981 by applying rates applicable to married persons filing separately. On the entire record, we have previously found that petitioners did not file a valid income tax return for taxable year 1981. Accordingly, petitioners may not now elect joint filing status. . Cf. . Thus, we hold that respondent correctly calculated petitioners' tax deficiency for 1981 on the basis of married persons filing separately. Finally, respondent determined additions to tax for the taxable years in issue. The burden of proof is on petitioners to establish that they are not liable for these additions to tax. . First, section 6651(a)(1) imposes an addition of five percent of the amount to be required to be shown as tax on a return for each month or fraction thereof for which a return is not filed, *568 not to exceed 25 percent in the aggregate of the tax. The addition to tax does not apply if the taxpayer establishes that the failure to timely file was due to reasonable cause and not due to wilful neglect. Petitioners presented no evidence to meet their burden of proof. The addition to tax under section 6651(a)(1) is sustained. Second, section 6653 (a) provides for additions to tax if any part of the underpayment is due to negligence or an intentional disregard of rules or regulations. Under section 6653(a), negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners claim that they had reported their income as farm manager and that they were advised that all farm income and expenses were reported by the Trust. Petitioners state that they were not negligent in the preparation of their tax returns. However, we find that petitioners were patently negligent in putting their faith in this flagrant tax avoidance scheme. No reasonable person would have trusted this scheme to work. See , *569 affg. a Memorandum Opinion of this Court. Accordingly, we find that petitioners intentionally disregarded rules and regulations of the Internal Revenue Code and have been negligent. The addition to tax under section 6653(a) is sustained. Third, respondent determined an addition to tax under section 6654(a) for underpayment of estimated tax. The section 6654 addition to tax is mandatory unless petitioners can bring themselves within one of the computational exceptions provided for in subsection (d) thereof which are not here applicable. . Accordingly, the addition to tax under section 6654(a) is sustained. Due to the fact that we hold that petitioners are not entitled to joint return filing status for taxable year 1981. Decision will be entered for the respondent.
Footnotes
*. Arthur P. Tranakos is currently suspended from practice before the Tax Court. ↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. Respondent determined that petitioner Loreta A. Schneider was liable for an addition to tax pursuant to section 6653(a)(2) of 50 percent of the interest due on $ 4,126.00. ↩
**. Respondent determined that petitioner Joe G. Schneider was liable for an addition to tax pursuant to section 6653(a)(2) of 50 percent of the interest due on $ 11,975.00. ↩
2. Beginning on April 1, 1979, the "Forty-Four Trust" operated under the name of "Bold Acres." Accordingly, references to the "Forty-Four Trust," "Bold Acres" or the "Trust" refer to the entity at issue in this case. ↩
3. On April 17, 1981, the Farmers Home Administration of the U.S. Department of Agriculture recorded a document titled "Satisfaction of Real Estate Security Instruments" acknowledging that petitioners were released from two mortgages on the farm property. On June 14, 1982, petitioners were released from another mortgage on farm property. On July 19, 1982, Northwestern State Bank released the Forty-Four Trust from a mortgage. The record does not disclose the amount or nature of these mortgages. ↩
4. For taxable years 1979 and 1980, respondent determined petitioners' deficiency on the basis of joint return filing status. However, for taxable year 1981, respondent determined that petitioners' filing status was married, filing separately and, therefore, issued separate notices of deficiency. ↩
5. Petitioners subsequently filed a petition in this Court relating to this notice (docket No. 12000-78). On October 15, 1979, petitioners' case was set for trial during the calendar of the Court in Council Bluffs, Iowa. The case was called on October 15, 1979, and recalled on October 16 and 19, 1979. On all three occasions, petitioners failed to appear. This Court granted respondent's motion that the case be dismissed for lack of prosecution. ↩
6. However, we note that the grantor trust provisions have been applied in numerous family trust cases. See, e.g., ; ; ; . ↩
7. This Court has decided over 50 of these family trust cases by unpublished Memorandum Opinions, ruling against the taxpayer in each case. See . ↩
8. Petitioner Joe G. Schneider testified at petitioners' trial. In this regard, "petitioner" in the singular form hereinafter refers to Joe G. Schneider. ↩
9. In this respect, we note that Lowell G. Anderson who served as first trustee is the same Lowell G. Anderson referred to in . See also ; United States v. Anderson,↩ 76-1 USTC par. 9279 (D.Wyo. 1976), revd. and remanded . 10. The only evidence presented by petitioners regarding farm income consisted of the copies of Form 1040NR. We note that Form 1040NR is not the correct form on which to report trust activity. Form 1041 is the proper return. Additionally, when compared to petitioners' 1979 and 1980 Forms 1040, the manager's fees shown on the March 31, 1980 and 1981, Forms 1040NR are totally incongruous. We have no confidence in the Forms 1040NR. ↩
11. At trial, petitioner testified as to his belief as to his basis in the farm property. Petitioner testified that his undepreciated cost basis would be somewhere between $ 48,000 and $ 50,000, not the $ 29,338 cost basis determined by respondent. However, petitioners provided no documentation of this fact, and we do not find petitioner's rambling, self-serving testimony convincing. As such, respondent's determination of petitioner's taxable gain on his farm property is sustained. Rule 142(a). ↩